Good morning, Your Honors. Good morning. Joe Vesavis on behalf of Petitioner, Dr. Iqbal. I'd like to reserve three minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. There are two rights that underpin the justice system. Opportunity to respond and legal counsel. The Department of Homeland Security in this case denied Petitioner both of these rights. And the final administrative removal order, the FARO in this case, should be vacated on those two independent grounds and remanded for further proceedings. Before going on to the merits, I'd like to briefly address the question of whether this petition is moot. Simply put, the removal of Petitioner does not render this petition moot. Executing a removal order before this petition can proceed does not render this panel unable to provide effective relief. As the respondent admitted in page three of their letter brief, the Department of Homeland Security has issued a policy directive. That is Policy Directive 11061.1 that permits the Immigration and Customs Enforcement to facilitate a non-citizen's return of removal from the deported country for further proceedings. And once this panel vacates the underlying final administrative removal order, it may order the government to facilitate the return and permit further proceedings, such as being able to request a fear-based deferral of removing under the final administrative removal order, which then permits the Petitioner to have an interview with an asylum judge. Counsel, would you please? I think that brings up the question of why vacater would be an appropriate remedy. So suppose that we agree with you that the failure to give 10-day notice and the failure to provide the list of counsel both violated the regulations and were both deprivations of due process. What sort of showing of prejudice would be necessary before vacater would be appropriate? Thank you, Your Honor. First, I would like to point out that prejudice is not required to be shown in this instance because the final administrative removal order is unlawful and is invalid per se. What case says that there is no showing of prejudice required for a due process violation? Your Honor, what I'm discussing is not a due process violation per se at this point. That is the second part of the argument. The first part is saying that the final administrative removal order is just invalid based on the congressional authority that the Department of Homeland Security can't issue it. There is a process that is required to be put into place before the final administrative order can be issued. That process was not followed. It is legally invalid. It is an unlawful order. Okay, so what case says that if the process is not followed for issuing the removal order, it's void ab initio? What case says that? Your Honor, there is no case that says that, but the final administrative removal order is a process that is enumerated in congressional statute and DHS regulations. Those processes were not followed. It is just invalid and unlawful per se. Okay, all right. If we don't – if we're not persuaded by that argument, could we go back to the issue of due process and what prejudice has been shown? Of course, Your Honor. Due process violation does require a showing of prejudice, and prejudice is shown in this case in two separate instances. When the final administrative removal order was already issued and signed prior to him even being provided notice of the charges, being provided notice of the – notice of intent, there was no opportunity for him to respond and to express a fear-based claim. That opportunity was robbed from him. And that opportunity, which was expressly enumerated in the congressional statute and in DHS regulations, that opportunity to respond to the charges, that is a due process violation. And the prejudice is he was not able to express that claim at that instance to be able to then trigger a reasonable fear interview, and that entire process for him to be able to seek relief as a deferral of the removal. Right, but if the only thing that he'd be seeking is deferral under CAT, that's not a challenge to the order of removal. That just means that the order of removal can't be carried out to India under the CAT. So why – if that's the only thing that he says he would have done, why would it make sense to vacate the order of removal, which it would have been entirely appropriate to enter an order of removal even if he was seeking and even if he obtained CAT deferral, right? Right, Your Honor. Vacating the final order of removal is necessary to allow him to respond to the notice of intent in the first place. The response of the notice of intent then allows him to make that fear-based interview. So when the government simultaneously served the final order of removal and the notice of intent simultaneously on petitioner, completely robbed all of the opportunities for him to make that fear-based interview, that final administrative order became the operative document, became the overriding factor. And once that is in play, then there was no opportunity. So the vacating of the order is necessary to be able to allow a response to the notice of intent as is required by the congressional statute and of the DHS's regulations. If the department were following things in the way that you believe they should have, when would he have asked for a reasonable fear interview? Would it have been within the 10-day window or afterwards? Yes, Your Honor. The opportunity to express the fear-based interview occurs during that 10-day window, before the final administrative removal order is issued and signed. If Mr. Iqbal was able to have the opportunity to express that fear-based claim, then at that point in time he would have been referred to the asylum judge for further proceedings and for an interview to determine the credibility of that fear-based interview. Let's just hypothetically say he asks for a fear-based interview. The asylum officer agrees that there's a reasonable fear. Would the order of removal still be entered in that case if there is a possibility of deferral under CAD or no? The final administrative removal in that case after the 10-day period may or may not still be issued. In this case, it may have been. It likely would have still been issued, but he's still entitled to relief of deferring that removal. Then this goes back to Judge Miller's point, which is if you're not challenging the order of removal itself, the factual grounds underlying it, then how are you establishing actual prejudice from the 10-day window? I can understand your point of establishing some level of prejudice over not being given an opportunity to ask for a reasonable fear interview and to have the ability of counsel to help prepare a request for deferral under CAD, but does it require vacular of the removal order? Let me ask it this way. Do we need to vacate the removal order in order to direct the government to try to bring back your client in order to make a request for deferral under CAD? Your Honor, the answer to that question would be no. It would not be required to vacate the removal order to remand for further proceedings, which is what Mr. Iqbal was denied in the first place. So this panel may be able to reverse the decision and remand for further proceedings to be able to express this fear-based claim and to ask for that fear-based interview, and that is what we are seeking here. So you're not seeking vacatur? No, Your Honor. We are not seeking vacatur. Okay. We don't have the specific order, but we are seeking remanding for further proceedings. And just to clarify one other thing, in your briefing you mentioned Montes Lopez, which is one of our prior cases that says under certain circumstances for removal proceedings, no showing of prejudice is required. But we have a different case, Gomez Velasco, which I think narrowed it to say in these administrative removal proceedings you do have to show prejudice. Which case do you think applies? I assume you mean Gomez Velasco because you were saying that you do need to show prejudice. Your Honor, in this case, there is prejudice per se but not being able to be represented by legal counsel, and that is Montes. Montes Lopez. Montes Lopez, yes, Your Honor. Thank you. The absence of legal counsel in this case is prejudice per se. And taking a step back, you have to understand that in those cases, the factual background is the proceedings were before an immigration judge were on a different kind in the expedited removal proceedings as they are here. In this expedited removal proceedings, the DHS is given a very powerful tool, in which case they are both the prosecutor, the judge, and the enforcer. And in this situation, there is no immigration judge. There is no immigration board. The only process for review of this petition is with this court on appeal. And in the circumstances of this case, when Mr. Iqbal was approached by DHS agents on July 25th, Reza Miranda writes, exercise his right to remain silent and at the same time was told, if you cannot afford a counsel, one will be provided for you. Two days later, he was served simultaneously with a notice of intent and the final administrative removal order. In this situation, that deprivation of counsel is paramount. At this point in time, he only had 14 days before he could have been removed. He only had 30 days to petition this court for review. And the prejudice, at that point in time, counsel would have been able to express, to direct his fear-based claim to get that interview. But additionally, counsel would have been, if a prejudice is required to be shown, counsel is what's imperative at that moment in time. Because when Mr. Iqbal filed for a petitioner of review, the counsel would have been able to file for a stay of removal. Can you say a little bit more about the proceedings that you contemplate happening on remand? So, as I now understand, you're not asking us to vacate the order of removal. So the order of removal would remain in place. He's obviously been removed. So we remand to the agency and tell them to do what, precisely? Further proceedings. One thing on it is to provide him a fear-based interview with an asylum judge. That is required under the congressional statute, and one of the options that he had to respond to the notice of intent, if it was properly issued, express a fear-based claim of persecution under the Conventions Against Torture, in which case he would be given an interview, and that fear-based claim would be then further investigated, and the withholding would be deferred. But under the regulations, that's something that normally happens before the order of removal is entered. So we would just be telling the agency, like, you still have the order in place, but pretend that you don't and have the kind of proceeding that you would have if you hadn't already entered an order? Correct. The order would be entered, and then there would be a stay of removal, which in this case was not able to be entered because the petitioner was not counseled. What is the point of a stay of removal at this point? Once the petitioner is facilitated back into the United States, the stay of removal would prevent him from being further deported to be able to finalize the proceedings. But his return, as I understand it under the policy statement in Delsed, American, is not automatic, right? He gets brought back if his presence is necessary for the proceedings. And so is it your view that his presence would be necessary for the further proceedings that you contemplate, so the agency would have to return him? Is that the idea? Yes, because the interview involves credibility determinations. I see. Your Honor, there's two minutes left. I'd like to revert through to reserve the remaining for rebuttal. Thank you. Thank you, counsel. We'll hear from the government. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I'd like to start with the mootness issue because I think that's first and foremost, and I think the Court asked the question and the government responded that technically this case is not moot because of the fact that technically under the return directive there is a theoretical possibility of returning the petitioner, and that is in accordance with Delsed, Moroccan. If that case did not exist, the government might have a different position, but the problem is that that case is published precedent in 2016. It relies on a return directive that has not, to my knowledge or my office's knowledge, has been altered in any way, and that case says even if it's a theoretical possibility, it does not require the government to return the person. And in fact, in that case, the Court expressly acknowledged it was fairly unlikely, and in this case seems to be the similar situation. Just because of the circumstances of this case in particular and the facts, it is only a theoretical possibility to my knowledge, and that is why we said it was not moot. It's perhaps a little bit of a legal fiction that way because his presence may not even be necessary, even if this Court grants the petition. What he is seeking, as this Court has pointed out, is not a vacator of the order. He wants a reasonable fear interview, something he could have asked for at any time, which I'll get to in a moment, but the fact is having an interview like that could be done from afar. It doesn't necessarily require his presence here, and it doesn't, you know, require a hearing before an IJ initially. It is simply an interview with an asylum officer, and that is what he is seeking. Because that is a theoretical possibility, the government has said that this is not moot under the return directive. I want to go now to the due process. Has the government conducted a reasonable fear interview from afar? I'm not aware of any reasonable fear interview having been requested. No, but my question is has it been conducted? Oh, has it ever taken place that way? From afar, yeah. I'm not personally aware of a situation. I could just imagine in this day and age of technology and the ability to conduct hearings remotely since the pandemic in particular, it seems that a lot of immigration-related proceedings are done via teleconference. I mean, it would seem to me that if he finally was appointed pro bono counsel to assist in these matters and normally these reasonable fear interviews are done in person, that his physical presence would be helpful to his case if it were in the United States. But, I mean, I take your point, you know, the panel in – I'm sorry, what was the case again with – Delsed did say it was a theoretical possibility, but that was enough to defeat mootness. Exactly, and that is the only reason why we have said that this case isn't moot, because this court has allowed a theoretical possibility, and we are not making any representations at this time that he will be returned at all. So it's a theoretical possibility because theoretically under that return directive, he would be asking for additional agency proceedings, and that is one of the bases that's mentioned in the return directive. So is it the government's position that he did not ask for a reasonable fear interview at any point?  At no point. And, in fact, he had 10 months. So I understand that this notice of intent issued the same day as the Faro. Yes. However, he was not removed until about 10 months after the Faro issued. So that issued in July of 2023, and he was removed in May of 2024. And at no time during that entire period of time, even though he understood that he could raise a claim as evidenced by his petition for review, because – Suggesting that he had been attacked for his sexual orientation in India. That affidavit was filed before he was removed, wasn't it? In his petition for review, he included an affidavit. He said that because I'm gay, I was physically and severely beaten by the Indian police, and so I will be killed or tortured if I remain there, so I came here, and since then I've never gone back to India. Compare that to the fact that he came here on a J-1 visa, which is almost like a diplomat visa through the State Department. Somebody would have to be very well familiar with immigration policies to do that, and clearly did not come here to escape harm in any way. He came here on a visa, came with his co-conspirator, who promptly opened up a bank account with him when they arrived in the U.S. to continue a criminal scheme they'd been operating since 2011 from India in which they defrauded people out of their life savings, most of them elderly people. So when was the petition for review filed? The petition was filed in August. So this was another question about the timeliness. It was filed. We applied the prisoner mailbox rule. So technically the pharaoh issued on July 27, 2023, and he had a date of filing the petition for review of August 14 of 2023, which would have been within 30 days of the pharaoh, although it was not actually filed with this court until well after August 14. So why didn't the government provide a reasonable fear interview at that point, given that, as you understand it, the affidavit suggests that there is a reasonable fear of his return based on that he would be persecuted or tortured? Because you said he never asked for one, but that seems pretty clear that there's a reasonable fear being alleged. I'll say that, first, it's not the government's obligation to raise a reasonable fear or to request it. My office is not in the position of having an obligation to do that. I'll say that first and foremost. It is always his obligation. The second thing is I will say I was not actually the counsel of record at that time, so I cannot speak to what was happening in the view of this case at that time. But I will say that because our point of view is that his claim is so bogus and that he is a known liar who defrauds people, there was probably a very good chance that the position was that this claim wasn't really viable because — Why not just send him in front of an asylum officer and have that determination be made if you think it's bogus? I mean, it's certainly true. It's certainly true, but that's how easy it was for him to ask for it, and he understood that. He understood in the rest of his petition for review filing, he said, all I wanted to do was ask for the reasonable fear interview, and I understand I have all these rights, and they were violated. So, I mean, this person — So what is the formal process to ask for a reasonable fear interview? You check a box. If this filing doesn't do it. Yeah. You check a box on the form or you simply state, I'm afraid to return to my home country. It's that simple. It does not require counsel. In fact, counsel can't be of assistance in that because counsel doesn't know if you subjectively fear returning to your country. That's something only he would know. And so he had the opportunity at any point to literally, literally it's checking a box or making a simple statement that I'm afraid to return home. Anything of that nature would have triggered the interview. That's the bare minimum. That is all that it takes. And it would have triggered it even after the final order had already been entered? Yes. I've seen plenty of reasonable fear interviews take place after the fair because as this Court has pointed out numerous times to my opposing counsel, he's not actually challenging the final order of removal. Even though he claimed to be in his brief throughout, he's not actually challenging the basis of the removability. The final order remains in place. That will not be affected. It hasn't been affected and it won't be affected. He is removable as an aggravated felon who is subject to expedited removal proceedings, and that removal order was executed pursuant to that FARO. So what he seeks is sort of this collateral proceeding of a reasonable fear process, which is available to people in his position that have very limited recourse due to the basis of his removability. And so it is really that simple to request it. He could have done it at any time. This person is not. And he could have done it at any time until he was actually removed? Is that what terminated his ability to do it? Yes, or I had been wondering if he had potentially reached out to his counsel from afar. I wouldn't know anything about those communications. I wouldn't know if they have any idea where he is. I know nothing about that. But at any time, I don't know if he has ever made any claim. I mean, are you saying that he could do it now? Like even without us? I mean, he could theoretically. Well, no, this isn't theoretically. This is what is the government's position? Like, you know, if tomorrow he were to say, okay, now I want a reasonable fear interview, would he get one? If the government wanted to arrange something from afar? Well, no, but you're representing the government. Would you want to arrange something? It would be up to the DHS. It wouldn't be up to us. But the reason you're here is to tell us what their position is? I would say that it would only be at this point if this court were to grant the petition and they would be considering, you know, what the next step would be based on that at this point. Here's my confusion about that. I thought you said that the reasonable fear interview could be requested at any time. And so the question is, with or without a ruling from the court, could he request a reasonable fear interview today as we sit here? I don't see why he could not. I'm not aware of anything that would prevent him. I've never seen it happen because it is pretty moot when somebody ends up returning at that point and then seeking a reasonable fear. Usually there's a reason to request it before you're removed. So most people don't raise it for the first time after removal. I have not seen that. But I'm not aware of something that actually prevents it. It just doesn't make a lot of intuitive sense because he's already back in India. Because you said you fear returning because you'll be tortured and then you're there.  And the fact that he's there and nothing has happened to him almost undermines the entire claim, if you were to say that at that point. We actually don't know what's happening. Exactly. Right. So there's a lot of factors there that we wouldn't – I've never seen that happen because it's usually just not the way that people would want to go about raising their claim. But – Is it in the government's discretion whether to grant or deny a request for a reasonable fear interview? Or must it take place? That's a process that's under the regulations. That's like a mandatory process. It doesn't involve discretionary relief. It involves mandatory relief. In this case, it's only deferral of removal. Right. And so that's a mandatory obligation under the Convention against Torture. So you're saying if he had requested it at any point before his removal, he would have been entitled to that reasonable fear interview? Yes. I've seen it happen many times where before removal happens but after the Faro issues because, again, it has nothing to do with the final order of removal. I've seen it happen where people get the reasonable fear proceedings. As this court knows – I guess what I'm a little bit, I guess, stuck on is the notion that if he expressed in his affidavit a reasonable fear of returning to India, it almost seems as if you're just presenting a formalism about this because why isn't that construed as a request for a reasonable fear interview? And it happened in August, and he doesn't get removed until March of the following year. Well, he understood in his filing who he needed to raise the claim to. I mean, he did understand that he tried to, you know, that he should have been able to try to raise that to DHS. I understand that he indicated that at the time. I think he had an obligation to raise it himself to DHS. We're not – I want to point out we're not talking about the typical petitioner here. In many of these cases, someone doesn't know English or they're very limited in their knowledge of how the system works. That is not the case here. This person is the savviest – one of the savviest petitioners I've come across because he's so savvy and knows English so well that he was hacking into people's bank accounts and computer systems and speaking with them in English to get them to divulge personal information to steal their life savings. This person is not somebody who doesn't understand what's going on the way that a typical petitioner does. And in all these cases where – Well, I mean, the fact that he committed fraud is, you know, to his discredit, but really doesn't tell us much about his understanding of immigration law. And so I'm sort of puzzled by the argument that, like, the level of process that he's due is different because of his other seemingly unrelated bad conduct. I mean, if we accept that he was pro se when he filed this petition for review, let's assume – Well, he was, right? I mean, like – Oh, right. It was a pro se petition, right? Okay. When you read his petition for review, it does not come across – I mean, you say, like, how do we know what he knows about the law and about how things work. I read this petition for review and immediately thought of ghostwriting, which is what I mentioned in my brief when someone has – maybe they don't have representation. He's either very – I read that part of your brief. If it was ghostwritten, it was not ghostwritten by a very good lawyer. It was written by somebody who understands how to cite statutes. I mean, it doesn't have to be a good lawyer, right? I'm saying that when you look at whether somebody was really clueless about what was going on and how much they understood, to get here on a J-1 visa, you have to have some knowledge of the immigration system. He didn't flee India. He came here in a very purposeful way after undertaking a very purposeful process through the State Department. And then he submits something that includes a lot of citations to cases, to statutes, a lot of legal jargon. It's somebody that clearly understood enough to be able to understand what he claims that he wasn't told he should have understood. It's very clear at that point that he is not the typical person. And I just want to point out Judge Rawlinson was not – our best case, I think, for this whole idea that he was not denied due process is an unpublished decision, Rojas Galvez, that Judge Rawlinson was on in 2015. It is an unpublished decision. But specifically, the case says the due process claim fails where the record indicates he was advised of his rights but refused to sign the form I-851, which is the NOI. There's a second unpublished decision that similarly deals with the refusal to sign the form, and that's taken as a waiver of the rights on there. So that takes care of that. And then as – But it doesn't take care of that because it's unpublished. Yes, Your Honor. But in terms of whether he was denied due process, we would say that he was not with respect to when the issuance of the fare – I see that my time is running out, so I'm trying to sum up. But we would say that – I also want to point out that Gomez-Velasco postdates Lopez-Montes. Lopez-Montes issued in 2012, Gomez-Velasco issued in 2018, and specifically applies to administrative removal proceedings. It is the case that is much more applicable to the set of circumstances we have here with a showing of prejudice. And from the government's perspective, there's no presumption of prejudice and no actual prejudice shown where, as I pointed out, in addition to the fact that he came here on a J-1 visa and intended to defraud people, he gave counseled interviewed statements during his pre-sentence investigation report that undermine any claim of past harm that he was alleging in his affidavit, which is another reason why whoever looked at this potentially initially could have seen that there really – his claim was completely contradictory to the evidence that the government already had regarding his background and seemed like a last-ditch effort in an attempt to stay here. All right. Thank you, Counsel. Thank you, Your Honor. Mr. Bottle. Your Honor, I'd like to briefly address the – our law firm was appointed counsel on Friday afternoon at 4 p.m. on May 17th. Petitioner was deported the following Monday, the following business day. We have not been able to contact counsel after repeated attempts. You've not been able to contact counsel? We have not been able to contact Petitioner since deportation. Petitioner was denied counsel throughout this entire proceeding. He was denied counsel when he was not provided the list of free legal services. He was denied counsel when he was read as Miranda rights, which said one will be appointed for you, but one never was. He was denied counsel when he was deported the business day after we have been appointed. For 10 months, he was not able to have proper counsel to be able to understand this labyrinth of immigration law to express how or when or how to even respond to any of this process that's been happening so fast and so quickly. Do you agree that he never asked for a reasonable fear interview during the time that he was being detained? Two points, Your Honor. One, he was never given an opportunity to express that because the FARA was issued immediately. And two, Your Honor was correct. In the affidavit filed on August 14th, he expressed his fear of interview. And under Section 208.31, simply expressing a fear would then trigger that asylum interview. Counsel, was there a form that he was given where he had the opportunity to request a reasonable fear interview? The proposing counsel represents that he was given a form where he had an opportunity to check the box, and he didn't. Your Honor, he was provided two forms at the same exact time. But I'm just asking, was a form provided to him that gave the option of requesting a reasonable fear interview? Yes, a form was provided to him, but no opportunity to then respond to that form was provided. The opportunity was taken from him because the final administrative removal order was issued. So are you saying that once the removal order was issued, it was too late for him to indicate he wanted a reasonable fear interview? For a petitioner who is uncounseled, sitting in prison, when having those two pieces of paper, he did not understand that that was available. That could have been something that could have easily been remedied had he been given a list of free legal services to then consult with counsel or to understand any of these rights. That opportunity was not there, and he was robbed of that. Your Honor, I see that my time is up. Thank you, Counsel. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, SANCHEZ